**514**

COMMERCIAL NAT. BANK IN SHREVE-
PORT, Appellant and Cross-Appellee, v.
J. T. CONNOLLY, Receiver, Commercial
National Bank of Shreveport, R. T. Moore,
et al., Intervenors, Appellees and Cross-
Appellants.

No. 12329.

United States Court of Appeals
Fifth Circuit.

Nov. 16, 1949.

For former opinion, see 176 F.2d 1004.

Sidney L. Herold, Sidney M. Cook,
Shreveport, La., and E. B. Stroud, Dallas,
Tex., for appellant and cross-appellee.

Monte M. Lemann, New Orleans, La.,
Otis W. Bullock, Marion K. Smith, Byron
D. Bullock, all of Shreveport, La., S. W.
Plauche, Sr., and S. W. Plauche, Jr., Lake
Charles, La., for appellees and cross-appel-
lants.

Before H U T C H E S O N, S I B L E Y,
HOLMES, McCORD, and WALLER, en
banc.

PER CURIAM.

The petition of J. T. Connolly, Receiver,
and the petition of R. T. Moore et al., in-
tervenors, for rehearing in the above cause
are both hereby denied.

HOLMES and McCORD, Circuit Judges
(dissenting).

Someone has said that when the heavens
and the earth have passed away and the
universe has returned to cosmic dust, di-
vine truth will stand unscathed amid the
wreck of matter and the crash of worlds.
We were reminded of this when we read the
petition for rehearing and saw the spear of
truth thrust into the vulnerable heart of the
contention that Class B assets were not
pledged to anyone but were acquired in full
ownership by the new bank. With the ar-
gument in that petition fortified by the quo-
tation from Hightower v. American Na-
tional Bank, 263 U.S. 351, 44 S.Ct. 123, 126,
68 L.Ed. 334, it is apparent that the deci-
sion in the case at bar not only resembles
but actually realizes the illustration therein
given of a court that adjudges the nature of
a mortgage deed while disregarding the de-
feasance clause. One qualification must be
added, however, which is brought into bold
relief by the alternative request that the
old bank be relieved of any charges for
taxes paid by the new bank on real estate
that is held to belong absolutely to the new
bank. Unless the majority opinion is modi-
fied on the tax item, this will become the
classic case that the Supreme Court had in
mind as the ne plus ultra of what ought not
to be done, when it said: "To do so would
be much like determining the nature and ef-
fect of a mortgage deed without considering
the defeasance clause."

An equally vulnerable contention is that,
by interest on assets, the parties meant serv-
ices for administering assets. It is not
often that several weeks after the execu-
tion of a contract, while it is actually in the
process of being performed, the parties
meet and agree upon what they intended by
a certain paragraph therein, which para-
graph years later becomes the subject of
litigation; but that very thing happened in
this case. On January 10, 1933, the parties,
with the contract before them, solemnly
agreed that there was an error in Article
V thereof, which provided a reasonable fee
for all services in administering Class B as-
sets. To correct this error it was expressly
agreed that there should be a reasonable
fee for administering Class C assets only.
The 6% interest charge was neither char-
acterized as compensation for administer-
ing Class B assets nor specifically men-
tioned; but, to make assurance doubly sure,
it was expressly provided that the costs of
administering Class B assets should fall
entirely upon the new bank. Thus the par-
ties agreed to eliminate the service charge,
and to let the 6% interest charge remain in
the contract. The court now by interpreta-
tion eliminates the 6% interest charge and
reinstates the service charge, which is ex-
actly the reverse of what the parties recit-
ed in the amendment was their intention.

This court necessarily takes judicial no-
tice of the proceedings in this case and of
its own membership. Consequently, it
knows that this case was heard before a
duly constituted court in bank consisting

of all six active judges of the court, except one who was disqualified by reason of his having been of counsel prior to his appointment as judge. Likewise, it knows that one of the majority judges who participated in the decision has since retired, effective October 1, 1949; that the judge who was disqualified died in July, 1949; and that successors to fill both vacancies were appointed in October, 1949.

The four active judges remaining upon the court, who participated in its decision, are equally divided as to what action should be taken upon the petition for rehearing now pending in this case, two of said judges being in favor of granting, and two in favor of denying, said petition. The retired judge is not competent to participate in the decision of the petition for rehearing because of Section 46(c) of the Judicial Code, 28 U.S.C.A., which provides that a court in bank shall consist of all the active judges of the circuit. Section 294(d) provides that no retired judge shall perform judicial duties except when designated and assigned. It is therefore apparent that a retired judge is not eligible to sit upon a hearing in bank, even by special designation of the chief judge. Since there are six active judges who constitute the court in bank, the petition for rehearing should be submitted to them. No other judge, except a circuit justice, is qualified to sit on this court in this case, since the duly constituted court in bank has heretofore been ordered by a majority of the judges. Two judges are not authorized to deny a petition for rehearing in this case.